IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAMELA LUST, )
 )
      Plaintiff, )
 )
vs. ) Civil Action No. 10-261
 )
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
      Defendant. )

**MEMORANDUM OPINION**

I. **INTRODUCTION**

Plaintiff, Pamela Lust, seeks judicial review of a decision of defendant, Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] Presently before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After consideration, Plaintiff's motion for summary judgment seeking a remand of this case for further consideration will be granted, and the Commissioner's cross-motion for summary judgment will be denied.

---

[1]The Court has jurisdiction of this appeal under 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)), which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the individual resides.

1

## II. Procedural History

Plaintiff filed an application for SSI on October 9, 2007, alleging disability since March 2, 2004 due to bipolar disorder, major depressive disorder, attention deficit hyperactivity disorder ("ADHD") and fibromyalgia.[2] (R. 103-09, 160). Following the denial of Plaintiff's SSI application, she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 81-83). At the hearing, which was held on April 2, 2009, Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.[3] (R. 38-64).

On April 22, 2009, the ALJ issued a decision denying Plaintiff's application for SSI based on his conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.[4] (R. 6-18). Plaintiff requested review of the ALJ's decision; however, the Appeals Council denied the request on

---

[2] Although Plaintiff alleges that she has been disabled since March 2, 2004, the Court notes that SSI is not payable prior to the month following the month in which the SSI application was filed. See 20 C.F.R. § 416.335.

[3] In an undated Disability Report, Plaintiff described the manner in which her mental and physical impairments limit her ability to work as follows: "I can't work with other people. I have loss of concentration, anxiety, mood swings. I'm in constant pain. I can't sit or stand for long periods of time." (R. 160).

[4] RFC is the most a disability claimant can still do despite his or her limitations. See 20 C.F.R. § 416.945(a).

January 2, 2009. (R. 1-5). This appeal followed.

### III. Personal Background

Plaintiff was born on March 1, 1962. She was 47 years old at the time of the hearing before the ALJ. (R. 43). With respect to education, Plaintiff is a high school graduate. In addition, she completed a one-year nursing assistant program at a community college. (R. 43, 166, 331). Plaintiff's past relevant work history is very limited. Between 2002 and 2004, Plaintiff taught water aerobics at a YMCA on a part-time basis, i.e., several hours per week.[5] (R. 44-47, 160).

### IV. Evidence of Mental Impairments[6]

In September 2004, Plaintiff was hospitalized for a week for severe depression and suicidal ideation. (R. 163, 208-09). Upon discharge, Plaintiff was referred to Mon Yough Community Services, Inc. ("Mon Yough CSI") for continued mental health treatment. (R. 232-37).

On February 20, 2007, Plaintiff returned to the Intense

---

[5] Plaintiff testified that she had to quit the part-time employment as a water aerobics instructor due to stress and an inability to function mentally. At this time, Plaintiff was going through a divorce which required her to move back to Pennsylvania. Plaintiff testified that her ability to function was severely impaired; she stayed in bed all day; she did not physically care for herself; and she only got out of bed to eat something "very little" and use the bathroom. (R. 44-47, 49).

[6] Plaintiff's appeal from the ALJ's adverse decision focuses on his evaluation of the evidence pertaining to her mental impairments. Accordingly, the Court will omit a summary of the evidence concerning Plaintiff's physical impairments.

3

Outpatient Program at Mon Yough CSI reporting "a reoccurance (sic) of depressive symptoms with isolation, anxiety, tearfulness, mood swings, hypersomnia and classic symptoms of bipolar illness."[7] (R. 303). Between that date and January 5, 2009, Dr. Dennis Wayne, Plaintiff's treating psychiatrist at Mon Yough CSI, assigned the following scores on the Global Assessment of Functioning ("GAF") scale to Plaintiff after office visits: 2/2/07 - **40** (R. 304); 3/6/07 - **40** (R. 302); 3/20/07 - **48** (R. 300); 4/17/07 - **50** (R. 298); 5/1/07 - **48** (R. 296); 5/22/07 - **55** (R. 294); 6/5/07 - **50** (R. 292); 7/2/07 - **40** (R. 290); 7/16/07 - **50** (R. 288); 8/13/07 - **45** (R. 286); 9/4/07 **50** (R. 284); 10/2/07 - **45** (R. 282); 10/30/07 - **47** (R. 280); 12/4/07 - **50** (R. 385); 2/28/08 - **48** (R. 383); 5/19/08 - **55** (R. 381); 8/11/08 - **50** (R. 379); 11/18/08 - **50** (R. 377) and 1/5/09 - **50** (R. 375).[8]

---

[7] In a Function Report completed on November 14, 2007, Plaintiff indicated that she received mental health treatment at Mon Yough CSI three days a week. (R. 168).

[8] The GAF scale considers psychological, social and occupational functioning on a hypothetical continuum of mental health to mental illness. It is used by mental health professionals to assess an individual's current treatment needs and provide a prognosis. The highest score on the GAF scale is 100 and the lowest is 1. Scores between 31 and 40 denote "**[s]ome impairment in reality testing or communication** (e.g. speech is at times illogical, obscure, or irrelevant) **OR some major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; ...); scores between 41 and 50 denote "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g.,

4

On December 18, 2007, Frank Mrus, Ed.D., a psychologist, performed a consultative evaluation of Plaintiff at the request of the Pennsylvania Bureau of Disability Determination. In his report of the evaluation, which was based on the information provided by Plaintiff, a Function Report completed by Plaintiff on November 14, 2007 and a report of a diagnostic evaluation of Plaintiff by Dr. Wayne on February 20, 2007, Dr. Mrus opined, among other things, that Plaintiff's ability to respond appropriately to work pressures in a usual work setting was markedly limited due to depressive factors, fatigue and decreased emotional and physical energy. (R. 329-36).

On December 27, 2007, Roger Glover, Ph.D, a non-examining State agency psychological consultant, completed a Mental RFC Assessment of Plaintiff at the request of the Social Security Administration based on a review of her file. Dr. Glover opined that Plaintiff was not significantly limited or only moderately limited in various abilities relating to understanding and memory, sustained concentration and persistence, social

---

no friends, unable to keep a job); and scores between 51 and 60 denote "**[m]oderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers).

American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (2000), at 34 (boldface in original).

5

interaction and adaptation, and that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her mental impairments.[9] Dr. Glover rejected the opinion of Dr. Mrus that Plaintiff was markedly limited in her ability to respond appropriately to work pressures in a usual work setting, finding that this opinion was without substantial support in the record. (R. 337-40).

Plaintiff's psychological diagnoses include major depressive disorder, bipolar disorder, substance abuse, social anxiety disorder, ADHD, posttraumatic stress disorder and generalized anxiety disorder. (R. 231-37, 278-304, 374-85). At the time of the hearing before the ALJ, Plaintiff was taking Lamictal, Paxil and Trazadone for her mental impairments.[10] (R. 192).

## V. ALJ's Decision

When presented with a claim for Social Security disability

---

[9] For purposes of Social Security disability, the ability to perform competitive work on a sustained basis means the ability to work on a regular and continuing basis, i.e., 8 hours a day for 5 days a week or an equivalent schedule. See Social Security Ruling No. 96-9p.

[10] Lamictal is used to increase the time between episodes of depression, mania and other abnormal moods in patients with bipolar disorder; Paxil is used to treat depression, panic disorder, social anxiety disorder, obsessive compulsive disorder generalized anxiety disorder and posttraumatic stress disorder; and Trazadone is used to treat depression, although the Court notes that Trazadone was prescribed for Plaintiff to help her sleep. (R. 294). www.nlm.nih.gov/medlineplus/druginfo (last visited 7/6/2010).

6

benefits, an ALJ must follow a sequential evaluation process,[11] which was described by the United States Supreme Court in Sullivan v. Zebley, 493 U.S. 521 (1990), as follows:

* * *

> Pursuant to his statutory authority to implement the SSI Program, (footnote omitted) the Secretary has promulgated regulations creating a five-step test to determine whether an *adult* claimant is disabled. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). (footnote omitted). The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 C.F.R. §§ 416.920(a) through (c)(1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A)(1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

* * *

493 U.S. at 525-26.

With respect to the ALJ's application of the sequential evaluation process in the present case, steps one and two were resolved in Plaintiff's favor; that is, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing date of her application for SSI on October 9, 2007,

---

[11]See 20 C.F.R. § 416.920(a)(4).

and the medical evidence established that Plaintiff suffers from the severe impairments of posttraumatic stress disorder, ADHD, generalized anxiety disorder, bipolar disorder, history of polysubstance abuse, fibromyalgia, degenerative disc disease of the lumbar and cervical spines, obstructive sleep apnea and a history of ventricular tachycardia. (R. 11). Turning to step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of any impairment listed in Part 404, Subpart P, Appendix 1 of the Social Security Regulations. (R. 11-12). Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC in light of her mental and physical impairments, concluding that Plaintiff retained the RFC to perform light work with the following limitations:[12] (a) no exposure to hazards such as unprotected heights and dangerous machinery; (b) no more than simple, routine and repetitive tasks; (c) no more than incidental independence and discretion; (d) no more than incidental changes in work processes; and (e) no interaction with the general public.[13] (R. 12-16). As to step four, the ALJ found that

---

[12] The Social Security Regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." See 20 C.F.R. § 416.967(b).

[13] In assessing Plaintiff's RFC, the ALJ gave "minimal" weight to Dr. Mrus's opinion that Plaintiff was markedly limited in her ability to respond appropriately to work pressures in a usual work setting, finding that this opinion was not supported by the

8

Plaintiff is unable to perform her past relevant work. (R. 16). Finally, at step five, based on the VE's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there were a significant number of jobs in the national economy which Plaintiff could perform despite her mental and physical impairments, including the light exertion jobs of a stock/inventory clerk, a shipping/receiving clerk and a housekeeper/cleaner. (R. 17).

**VI. Standard of Review**

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986).

**VII. Discussion**

Plaintiff contends that the ALJ erred by failing to address

---

totality of the evidence. (R. 15-16).

the consistently low GAF scores assigned to her by Dr. Wayne over a two-year period which (a) support the opinion rendered by Dr. Mrus, the consultative psychiatric examiner, on December 18, 2007, that Plaintiff's mental impairments cause a marked limitation in her ability to respond appropriately to work pressures in a usual work setting and (b) resulted in a deficient RFC assessment that, in turn, resulted in an inadequate hypothetical question by the ALJ to the VE.[14]

In response to the foregoing argument, the Commissioner asserts that "the ALJ's rejection of the GAF scores does not render the decision flawed,"[15] citing Gilroy v. Astrue, No. 08-4908, 2009 WL 3720580 (3d Cir. Nov. 9, 2009). (Doc. No. 11, p. 12). In Gilroy, a disability claimant sought review of an ALJ's adverse decision arguing, among other things, that the ALJ erred in failing to address a GAF score of 45 in a record of a treating psychiatrist. Despite this omission, the district court held that substantial evidence supported the ALJ's decision. On

---

[14] In anticipation of a frequent argument by the Commissioner that GAF scores, in and of themselves, cannot establish disability, Plaintiff has clarified her argument in this appeal. Specifically, Plaintiff is not arguing that her consistently low GAF scores compel a finding that she is disabled. Rather, Plaintiff is arguing that the GAF scores are relevant evidence which the ALJ was required to address in his decision. (Doc. No. 9, pp. 10-11).

[15] Although the Commissioner characterizes the decision of the ALJ as a rejection of Dr. Wayne's GAF scores, the ALJ's failure to even mention the GAF scores renders it impossible to determine whether the GAF scores were rejected or simply ignored.

appeal, the Court of Appeals for the Third Circuit affirmed the district court's judgment, holding that despite the ALJ's failure to make explicit reference to the psychiatrist's one-time rating of GAF 45, the decision was supported by substantial evidence because the psychiatrist did not express an opinion regarding the claimant's specific limitations or explain the basis for his GAF rating.

After consideration, the Court finds the present case distinguishable from the facts presented in Gilroy. First and foremost, the records of the claimant's treating psychiatrist in Gilroy contained one GAF score. In contrast, Dr. Wayne rated Plaintiff on the GAF scale following office visits on 19 occasions between February 29, 2007 and January 5, 2009, and, on 17 of those occasions, Dr. Wayne opined that Plaintiff suffered from major or serious impairments as a result of her mental conditions.[16]

Second, although, as noted by the ALJ, some of Plaintiff's mental status examinations during those office visits were described as within normal limits,[17] there also were mental status examinations during which Plaintiff presented with a

---

[16] The only exceptions were May 22, 2007 and May 19, 2008, a year later, when Dr. Wayne opined that the impairments resulting from Plaintiff's mental conditions on those dates were moderate.

[17] The mental status examinations covered appearance, orientation, affect/mood, speech, judgment/insight, thought process, thought content and suicidal/homicidal ideation.

11

labile (unstable), irritable or depressed affect/mood, an impairment in judgment/insight and fragility with regard to impulse control which support Dr. Wayne's GAF assessments. (R. 291, 289, 374, 376, 382, 384).

Third, with regard to the ALJ's observation that Dr. Wayne's records contain notations that Plaintiff's mental status was stable overall at times, this fact does not support the ALJ's adverse decision. As noted by the Court of Appeals for the Third Circuit in Morales v. Apfel, 225 F.3d 310 (3d Cir.2000):

* * *

> Nor was it proper for the ALJ to reject Dr. Erro's opinion based on Dr. Erro's notation that Morales was stable with medication. The relevant inquiry with regard to a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity. See 42 U.S.C. § 423(d)(1)(A). For a person, such as Morales, who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from the home or a mental health clinic. Dr. Erro's observations that Morales is "stable and well controlled with medication" during treatment does not support the medical conclusion that Morales can return to work. Dr. Erro, despite his notation, opined that Morales's mental impairment rendered him markedly limited in a number of relevant work activities. Other information in the treatment records supports this opinion. Thus, Dr. Erro's opinion that Morales's ability to function is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting.

* * *

225 F.3d at 319.

Similarly, in the present case, the evidence shows that Plaintiff

12

took several medications to control her mental impairments throughout her treatment at Mon Yough CSI. As a result, any reference to Plaintiff's mental condition as being stable does not support a conclusion that she can work on a regular and continuing basis.

Finally, in deciding to give minimal weight to the opinion of Dr. Mrus that Plaintiff's mental impairments markedly limit her ability to respond appropriately to work pressures in the usual work setting, the ALJ relied on evidence in Mon Yough CSI's records which purportedly support this determination, while ignoring the GAF scores in those records which clearly do not support it. This is impermissible. An ALJ is required to consider all relevant evidence in the case record in assessing a disability claimant's RFC. See 20 C.F.R. § 416.945(a); Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir.2001), citing, Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir.2000).[18] The numerous low GAF scores assigned to Plaintiff by Dr. Wayne clearly constitute relevant evidence supporting her claim of

---

[18] See also Wier v. Heckler, 734 F.2d 955 (3d Cir.1984)("Once again we find that the failure of an administrative law judge to mention and explain medical evidence adverse to his position has deprived the Secretary of the substantial evidence necessary to sustain his determination."); Cotter v. Harris, 642 F.2d 700 (3d Cir.1981)(ruling that claimant who sought disability benefits for his heart condition was not disabled was required to be vacated when ALJ failed to explain his implicit rejection of evidence which supported claim or even to acknowledge presence of such evidence).

13

disability. Thus, the ALJ erred in failing to discuss them.[19]

**VIII. Conclusion**

For the foregoing reasons, the Court agrees with Plaintiff that this case must be remanded to the Commissioner for further proceedings, including consideration of Plaintiff's GAF scores and additional testimony from a VE regarding Plaintiff's ability to engage in work on a regular and continuing basis in light of all the limitations resulting from her mental and physical impairments. Also, prior to the issuance of a further decision on Plaintiff's application for SSI, she should be given the opportunity to obtain a Mental RFC Assessment by Dr. Wayne, her long-time treating psychiatrist, which specifically identifies the work-related limitations resulting from her mental impairments.

*William L. Standish*
William L. Standish
United States District Judge

Date: July 12, 2010

---

[19] See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (Although the ALJ "may properly accept some parts of the medical evidence and reject other parts ... he must consider all the evidence and give some reason for discounting evidence he rejects."); Colon v. Barnhart, 424 F.Supp.2d 805 (E.D.Pa.2006) (remanding case to the Commissioner because the ALJ's report ignored district court and Third Circuit case law requiring discussion of the discounting of probative evidence, specifically GAF scores); Santiago-Rivera v. Barnhart, 2006 WL 2794189 (E.D.Pa. Sept. 26, 2006)(GAF scores constitute medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability).